# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Mohamed Ali Elmi, | Case No. 20-cv-2241 (JRT/HB) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Warden Guy Bosch, | |
| Respondent. | |

---

HILDY BOWBEER, United States Magistrate Judge

On October 28, 2020, Petitioner Mohamed Ali Elmi, pro se, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging his Minnesota conviction of criminal sexual conduct, aiding and abetting kidnapping, and aggravated robbery. (Pet. at 1 [ECF No. 1].) The petition has been referred to this Court pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for the issuance of a report and recommendation. For the reasons set forth fully below, the Court recommends that the petition be denied.

## I.    Procedural Background

A grand jury indicted Elmi on six counts: two counts of first-degree criminal sexual conduct in violation of Minn. Stat. § 609.342, subd. 1(c) (2014) (penetration and fear of great bodily harm) (Count I) and § 609.342, subd. 1(e)(i) (2014) (penetration, causing personal injury, and using force or coercion) (Count II); one count of second-degree criminal sexual conduct in violation of Minn. Stat. § 609.343, subd. 1(c) (2014)

(sexual contact and fear of great bodily harm) (Count III); one count of aiding and abetting kidnapping in violation of Minn. Stat. § 609.25, subd. 1(2) (2014) (removing without consent to facilitate a felony or flight and failing to release victim in a safe place) (Count IV); and two counts of first-degree aggravated robbery in violation of Minn. Stat. § 609.245, subd. 1 (2014) (based on the actions against two different victims) (Counts V and VI). *State v. Elmi*, 2017 WL 5663491, at *2 (Minn. App. Nov. 27, 2017) ("*Elmi I*"). If the factfinder determined that two or more heinous elements exist, the three criminal-sexual conduct charges were subject to a life sentence without release. *See* Minn. Stat. § 609.3455, subd. 2(1) (2014).

After the state presented its case, Elmi's counsel moved the district court to allow him to present a "pressure" defense. *Elmi I*, 2017 WL 5663491, at *3. The district court denied the motion as untimely because Elmi did not provide the State with proper notice of a duress defense pursuant to the Minnesota Rules of Criminal Procedure. *Id.* Elmi then chose not to testify. When asked by the district court whether he understood and was comfortable with that choice, Elmi answered affirmatively. *Id.* Elmi's counsel made an offer of proof as to what Elmi would have testified with regard to his co-defendant's threats and rested his case. *Id.* The jury found Elmi guilty of all six counts and found three heinous elements. Pursuant to Minn. Stat. § 609.3455, subd. 2(1), the district court sentenced Elmi to life in prison without the possibility of release. (App. 168.)[1] The Minnesota Department of Corrections placed him in Stillwater prison.

---

[1] The relevant state district and appellate court papers are located on the docket as an appendix (App.) to Respondent's memorandum at ECF No. 8.

Elmi appealed to the Minnesota Court of Appeals, arguing it was error to prevent Elmi from testifying and that insufficient evidence supported the jury's finding of two or more heinous elements. *Elmi I*, 2017 WL 5663491, at *3. The Court of Appeals concluded the trial court did not abuse its discretion in excluding the proffered testimony about duress because the defense was untimely raised. *Id.* at *4. It also concluded that any error in limiting the duress-related testimony "would have been harmless beyond a reasonable doubt because the evidence against appellant would not have established a defense or invalidated the heinous elements." *Id.* However, for reasons unrelated to the instant Petition the Court of Appeals reversed and remanded for the district court to vacate the formal adjudication of guilt on one of the counts of first-degree criminal sexual conduct and on the count of second-degree criminal sexual conduct. *Id.* at *6–7.

Elmi filed a Petition for Review with the Minnesota Supreme Court challenging (1) the enhanced sentence based upon the heinous elements and (2) the trial court's ruling related to the duress defense. (App. 60.) On January 24, 2018, the Minnesota Supreme Court denied review. (App. 58.) Judgment was entered on February 28, 2018. (App. 56.)

On October 22, 2018, Elmi, through counsel, filed a timely postconviction petition arguing ineffective assistance of trial counsel and ineffective assistance of appellate counsel. (App. 47.) The Minnesota district court denied the petition. (*Id.*) On April 20, 2020, the Minnesota Court of Appeals affirmed. (App. 14 ("*Elmi II*").) The Court of Appeals concluded that even if trial counsel's performance fell below the standard of reasonableness, Elmi had not demonstrated that a duress defense would have altered the

result of the proceeding. *Id.* Judgment was entered on July 8, 2020.

Elmi had thirty days from April 20, 2020, the date of the Court of Appeals decision in *Elmi II*, to file his petition for review with the Minnesota Supreme Court. *See* Minn. R. Crim. P. 29.04, subd. 2. On July 24, 2020, Elmi filed a Petition for Review to the Minnesota Supreme Court raising the issue of ineffective assistance of counsel related to his attorney's failure to timely notice a proffered defense of duress. (App. 4–5.) He also filed a motion to accept the late petition, arguing Covid-19 safety protocols at the jail caused the delay. (App. 6–8.) The Minnesota Supreme Court denied Elmi's motion to accept a late petition because the 30-day deadline had passed, and the deadline for the 30-day permissive extension had also expired. (App. 1–2.) On October 28, 2020, the court received Elmi's instant petition.

## II.    Discussion

Elmi argues that his conviction violates the Due Process Clause of the Fourteenth Amendment as well as the Sixth Amendment because 1) trial counsel was ineffective under *Strickland*[2] because he failed to provide timely notice of the proposed duress defense, 2) Elmi was denied the right to present a defense and testify, and 3) his sentence was not supported by sufficient evidence of the heinous elements. (Pet. at 1.) Respondent argues that Elmi's claim of ineffective assistance of counsel is procedurally defaulted because Elmi failed to exhaust his state remedies. Respondent further argues the petition should be denied on the merits.

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

A.    **Standard of Review**

Under AEDPA, a federal court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  However, an application for a writ of habeas corpus filed in federal court by a state prisoner "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1).  "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented.  28 U.S.C. § 2254(c). "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

If a petitioner demonstrates that he has exhausted available state remedies, or the federal habeas court addresses the merits under § 2254(b)(2), the court proceeds to review the petitioner's claims under AEDPA's highly deferential standard for evaluating state courts.  *See Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004); *Renico v. Lett*, 559 U.S. 766, 773 (2010) ("state-court decisions [must] be given the benefit of the doubt."). The petitioner must show that the adjudication of the claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented to the state court proceeding.  28 U.S.C. § 2254(d); *see also Finch v. Payne*, 983 F.3d 973, 978-80 (8th Cir. 2020) (explaining § 2254).

A decision is contrary to clearly established federal law if the state court reached a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or arrived at an opposite conclusion to a Supreme Court case on materially indistinguishable facts.  *Litschewski v. Dooley*, 792 F.3d 1012, 1015–16 (8th Cir. 2015).  A federal habeas court must deny a writ "even if [the Court] disagrees with the State court's decision—so long as that decision is reasonable in view of all the circumstances."  *May v. Iowa*, 251 F.3d 713, 716 (8th Cir. 2001).  In addition, the federal habeas court must presume the state court's factual determinations are correct unless the petitioner presents clear and convincing evidence to the contrary.  *Perry v. Kemna*, 356 F.3d 880, 883 (8th Cir.), *cert. denied*, 543 U.S. 1022 (2004).

## B.    Exhaustion of Remedies

To fulfill the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Although a prisoner is not required to pursue extraordinary remedies outside of the standard process, the prisoner "must seek discretionary review of the state supreme court when that review is part of the ordinary and established appellate review process in that state."  *Dixon v. Dormire*, 263 F.3d 774, 777 (8th Cir. 2001).  A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the petitioner's claims.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

6

### 1.    Whether Petitioner Procedurally Defaulted His *Strickland* Claim

The facts underlying Respondent's procedural default argument are undisputed; the issue is whether, on these facts, Elmi's untimely petition to the Minnesota Supreme Court exhausted his state remedies.  (*Compare* Resp. Mem. at 6 [ECF No. 7], with Petr.'s Mem. Supp. Pet. at 19 [ECF No. 14].)  There is no doubt that a discretionary appeal to the Minnesota Supreme Court is part of Minnesota's established appellate process.  *See Daniels v. Minnesota*, Case No. 19-cv-807 (ECT/LIB), 2021 WL 3913620, at *2–3 (D. Minn. Sept. 1, 2021).  From April 20, 2020, until May 20, 2020, that process was available to Elmi; if he was able to show good cause for delay, that process was available until June 20, 2020.  However, the time came and went, and Elmi's "failure to present his federal habeas claims to the [Minnesota] Supreme Court in a timely fashion has resulted in a procedural default of those claims."  *O'Sullivan*, 526 U.S. at 848; *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) ("Thus, if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal . . . the prisoner is generally barred from asserting those claims in a federal habeas proceeding."); *Franklin v. Hawley*, 879 F.3d 307, 311 (8th Cir.), *cert. denied*, 139 S. Ct. 116 (2018). The Minnesota Supreme Court considered the claim to be procedurally defaulted and the Court is obliged to respect the conclusion of the Minnesota Supreme Court on Minnesota procedure.  *See Murray v. Hvass*, 269 F.3d 896, 899 (8th Cir. 2001), *cert. denied*, 535 U.S. 935 (2002); *May*, 251 F.3d at 716; *Owsley v. Bowersox*, 234 F.3d 1055, 1058 (8th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001); *Carney v. Fabian*, 441 F. Supp. 2d 1014, 1026 (D. Minn. 2006).

## 2.    Whether the Court Should Excuse the Procedural Default

Procedural default may be excused if a petitioner can show cause and prejudice, or that failure to consider his claims would result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Daniels*, 2021 WL 3913620, at *3. Here, Elmi argues only the former.  To show cause, a petitioner must show something "external to the petitioner, something that cannot be fairly attributed to him" caused the default. *Coleman*, 501 U.S. at 753.  Prejudice, in this context, may be proved by showing that the circumstances caused Elmi to forgo his right to appeal.  *Cf. Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (holding attorney's failure to follow specific instructions to file a notice of appeal may cause prejudice to the petitioner to the extent the petitioner had to forgo his right to appeal).

Elmi contends that even though he was represented by post-conviction counsel, he did not learn about the Minnesota Court of Appeals' decision until early May. (Cause & Prejudice Aff. ¶¶ 7–8 [ECF No. 15].)  Additionally, he claims he could neither contact counsel to request they file an appeal nor write the petition for review himself due to the Covid-19 lockdown restrictions in place at the time.  (*Id.* ¶¶ 8–9.)  He filed, pro se, his petition for review a day after the jail gave him access to the law library.  (*Id.* ¶ 10.)

To the extent Elmi claims his post-conviction counsel's ineffectiveness caused the procedural default, his argument must be rejected.  As the Supreme Court explained in *Coleman,* "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" 501 U.S. at 753.  While ineffective

assistance of counsel in violation of the Sixth Amendment is cause, "[t]here is no constitutional right to an attorney in state post-conviction proceedings. . . . Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Id.* at 752. Elmi has not shown that his attorney wholly abandoned him. *See Maples v. Thomas*, 565 U.S. 266, 283 (2012). Instead, this is the ordinary case where the petitioner bears "the risk of attorney error that result[ed] in a procedural default," and any such error cannot be cause to avoid that default. *Coleman*, 501 U.S. at 752–53.

On the other hand, Elmi's arguments about the jail's lockdown present a more difficult question. The Covid-19 pandemic is clearly an external circumstance that cannot fairly be attributed to Elmi. The *Daniels* court addressed the cause and prejudice inquiry in the Covid-19 context. 2021 WL 3913620, at *3. There, the petitioner failed to show cause because the time to present his federal claims in state court was in 2019— prior to the onset of the pandemic in March 2020. *Id.* But here, the time for Elmi to act fell plainly in the early months of the pandemic. Because of the lockdown in Stillwater prison, he could not contact his post-conviction counsel and could not access the law library to prepare the petition. (Cause & Prejudice Aff. ¶¶ 8–9.)

Nor was this the type of action Elmi could complete without access to the law library. Other courts that have had the opportunity to consider filings delayed by Covid-19 restrictions on law library access have looked at several factors to determine whether cause exists to pardon a petitioner's procedural default, including what legal knowledge is required to file the document. *See Dawson-Durgan v. Shoop*, Case No. 1:19-cv-382, 2022 WL 528271, at *15–16 (S.D. Ohio Feb. 22, 2022). The court in *Dawson-Durgan*

found that the petitioner had not shown cause because "preparing a mailing a notice of appeal is a very simple matter, requiring no legal research," despite having previously granted extensions due to Covid-related difficulties in other situations.  *Id.* at *16;  *see also Adkins v. Warden, London Corr. Inst.*, Case No. 2:21-cv-01203, 2021 WL 4355565, at *12 (S.D. Ohio Sept. 24, 2021) (finding unpersuasive petitioner's claim that Covid restrictions delayed his appeal, as notice of appeal requires no legal knowledge).  By contrast, in the present case, Elmi filed a petition for review and a motion to extend the 30-day limit to file such a petition, documents that are more complicated than the "one sheet of paper and no legal research" required for filing a notice of appeal.  *Adkins*, 2021 WL 435565, at *12.  The petition and motion required Elmi to craft legal arguments as to why the Minnesota Supreme Court should excuse the delay in filing the petition and review the Court of Appeals' holding.

It is also not clear that Elmi had enough legal knowledge to prepare that petition without the aid of the law library.  Some courts have found that Covid-19 restrictions to the law library do not show cause because the petitioners previously demonstrated or had access to sufficient legal knowledge to file their motions.  *See Korte v. United States*, Case No. 8:20-cv-02023-JLS, 2021 WL 5507211, at *12 (C.D. Cal Nov. 24, 2021); *Petlock v. United States*, Case No. 22-cv-344, 2022 WL 577966, at *2 (D.N.J. Feb. 25, 2022).  Unlike the petitioners in those cases, it does not appear from the record that Elmi substantially borrowed or had previously made the same legal arguments.

Elmi also stated that the law library was completely inaccessible at this time. Generalized allegations that Covid-19 protocols "affected" access to the library is

10

insufficient to establish cause. *See Banks v. Holbrook*, Case No. EDCV 21-0051-JWH, 2021 WL 4595769, at *8 (C.D. Cal. Aug. 5, 2021). But here, Elmi averred that absent a medical emergency, movement was severely restricted in Stillwater facility during the relevant time period. (Cause & Prejudice Aff. ¶ 4.) He also stated that, despite numerous requests, prison officials refused to allow him access to the law library due to the lockdown restrictions (*id.* ¶ 9) and he has provided at least some corroborating information about the lockdown conditions at the Stillwater facility. (App. 9.) *Compare with Adkins*, 2021 WL 435565, at *12 (noting that the petitioner did not provide any detail about what efforts he made or corroboration of how the pandemic affected his particular prison at the time in question). The Court finds Elmi has sufficiently demonstrated that circumstances that could not be fairly attributed to him resulted in a delayed notice of appeal, and thus has established cause. As in other cases dealing with the failure to file a timely notice of appeal, the Court will presume that these circumstances prejudiced Elmi by causing him to forgo his right to appeal. *See, e.g., Watson v. United States*, 493 F.3d 960, 963-64 (8th Cir. 2007) ("In such a case, prejudice is presumed because the defendant has forfeited his right to an appellate proceeding[.]") (discussing prejudice under *Strickland*). The Court therefore turns to the merits of the claims raised in his petition.

### C.    *Strickland* Claim

Elmi claims his trial counsel provided ineffective assistance by failing to raise his duress defense in a timely manner. (Pet. at 4–7.) In order to prevail on an ineffective-assistance-of-counsel claim, Elmi must satisfy the two-prong test announced in

11

*Strickland v. Washington,* 466 U.S. 668, 687 (1984). First, he "must show that counsel's representation fell below an objective standard of reasonableness," the proper measure of which is "reasonableness under prevailing professional norms." *Id.* at 688. Second, he "must show that the deficient performance prejudiced the defense" and that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The *Strickland* test is a high bar that must be applied with care because ineffective assistance of counsel claims can "function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Elmi claims his trial counsel knew about his duress defense months before the trial. (Petr.'s Aff. ¶¶ 3, 11 [ECF No. 16].) He further states he had given his trial counsel power of attorney to obtain medical records in support of this defense. (*Id.* ¶ 10–11.) His trial counsel disputed this (App. 4, 104-05), but the Minnesota Court of Appeals assumed for purposes of its analysis that the failure of his counsel to timely raise that defense fell below professional standards, thus meeting the first prong of *Strickland*. However, the Court of Appeals concluded that Elmi had not met the second *Strickland* prong, i.e., he did not show that his counsel's actions deprived him of a fair trial.[3]

To meet the second *Strickland* prong, Elmi was required to demonstrate that but for his counsel's errors, there is a reasonable probability the result of the proceeding

---

[3] Because the Court limits its analysis to the second prong of *Strickland*, it need not resolve the dispute as to when trial counsel actually became aware of the proffered defense.

would have been different. *Strickland*, 466 U.S. at 694. In assessing whether he had met

that burden, the Minnesota Court of Appeals summarized the trial testimony as follows:

Elmi initially approached the victim, without the driver present, while pointing a gun at

her. *Elmi I*, 2017 WL 5663491, at *1. He threatened to kill her if she did not stop crying.

*Id.* After stealing the victim's checks, debit card, iPhone, and other materials, he took her

at gunpoint to the driver's car. *Id.* Elmi's brother slept soundly in the back seat. *Id.*

When the driver stated that he wanted to kill someone, Elmi responded, "Me too." *Id.*

The victim testified that at various points as they drove to an ATM to empty the victim's

bank account, she saw both Elmi and the driver with a gun, but she could not tell if it was

the same gun or multiple guns. *Id.* Later when the driver voiced his desire to force the

victim into a sexual act, Elmi volunteered that he knew "the perfect place" and directed

the driver to Riverside Park in Minneapolis. *Id.* at *2. Once at the park, Elmi and the

driver sexually assaulted the victim. *Id.* At one point the driver was ready to leave and

told the victim that he would take her home, but Elmi declared that he "wasn't done yet"

and continued sexually assaulting the victim. *Id.* This account was corroborated by

video evidence and the existence of Elmi's DNA and palmprint at the scene of the sexual

assault. *Id.*

Had a duress defense been proffered, Elmi would have had to prove that (1) due to

threats, he was under a present reasonable apprehension of instant death should he refuse

to participate in the crime; (2) that fear of instant death continued throughout the

commission of the crime; and (3) he could not safely withdraw. *State v. Charlton*, 338

N.W.2d 26, 31 (Minn. 1983). Elmi claims the driver pulled out a gun and threatened to

kill him and his brother if Elmi did not help him rob someone. (Petr.'s Aff. ¶ 4.) Elmi claims that he feared for not only his life, but also for the lives of his brother and the victim. (*Id.* ¶ 6.) The only reason Elmi followed the driver's orders was because he knew the driver would shoot everyone if he did not. (*Id.* ¶ 7.) Elmi further states that after he refused to rob another person (after they released the victim), the driver attempted to shoot Elmi and then assaulted him with a gun to the point of unconsciousness. (*Id.* ¶ 8–9.) To support his claims, Elmi proffers a medical record documenting his admittance into the Hennepin County Medical Center on the night of the offense with head injuries. (*Id.* ¶ 6).

But the Minnesota Court of Appeals held that the evidence adduced at trial belied Elmi's proffered defense. First, the evidence showed Elmi was not fearful for his life throughout the commission of the crimes underlying the conviction challenged in this Petition, but rather a willing participant. Elmi could have complied with the driver's demands by taking the victim's checks, cash, debit card, and iPod, yet instead he chose to take it a step further and forced the victim into going with him to the car. *Elmi I*, 2017 WL 5663491at *1. Furthermore, Elmi never claimed the driver coerced him to commit sexual assault against the victim. Even when the driver stopped sexually assaulting the victim and said they would take the victim home, Elmi, on his own initiative, continued the sexual assault. *Id.* at *2.

Second, the Minnesota Court of Appeals concluded that was Elmi was not unable to safely withdraw. It noted he was alone and armed when he first approached the victim. *Id.* at *1. He was also armed at certain times throughout the car ride to the ATM. *Id.*; *see*

*State v. Cain*, 746 N.W.2d 339, 358 (Minn. 2008) (noting that because the appellant was armed, he could have safely withdrawn and thus could not prove a duress defense); *State v. Yang*, 644 N.W.2d 808, 819 (Minn. 2002) ("After [codefendant] dropped [appellant] off at the getaway car, the record reflects that he was alone, armed, and could have walked away from the stolen car and away from the crime.").

Even if Elmi feared for his own or another's life later in the evening when he claims the driver threatened him if he did not rob another person, the Minnesota Court of Appeals concluded that the evidence overwhelmingly weighed against a finding of duress in connection with the sexual assault against the victim. *Elmi I*, 2017 WL 5663491 at *4. And, the exclusion of the duress defense did not limit Elmi's ability to present a case against the heinous elements. *Id.* In the end, it concluded any error in excluding the proffered defense was harmless beyond a reasonable doubt. *Id.*; *see, e.g.*, *Davis v. Ayala*, 576 U.S. 257, 267 (2015).

This Court must presume the state court's factual determinations are correct unless the petitioner presents clear and convincing evidence to the contrary. *Perry*, 356 F.3d at 883. The decision of the Minnesota Court of Appeals is not based on an unreasonable determination of the facts, nor did it involve an unreasonable application of the *Strickland* standard. 28 U.S.C. § 2254(d). The court articulated reasonable grounds, well-supported by the record, for concluding that trial counsel's performance did not deprive Elmi of a fair trial under *Strickland*'s deferential standard. *Richter*, 562 U.S. at 105. As a result, the petition for habeas corpus on this ground should be denied.

**D.      Right to Present a Defense and Right to Testify**

It is well established that a criminal defendant has a constitutional right to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). This includes the right to testify in his own defense. *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). But it is equally well established that these rights are not without limitation, and they may "bow to accommodate other legitimate interests in the criminal trial process." *Id.* at 55 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)). State and federal rule makers enjoy broad latitude fashioning rules that exclude evidence from criminal trials. *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Nevertheless, restrictions on a criminal defendant's right may not be arbitrary or disproportionate, and the State must evaluate whether the interests served by a rule justify the restrictions. *Id.* at 55–56.

The Supreme Court has recognized that rules requiring that notice be given of the defendant's intention to present a particular defense or adduce certain evidence are reasonable. In *Nevada v. Jackson*, the trial court excluded evidence of the victim's prior false allegations after the defendant failed to file the required notice. 569 U.S. 505, 510 (1990). In reversing the circuit court's grant of habeas relief, the Court held that there was nothing in its case law to suggest that such a notice requirement is unconstitutional. *Id.* The Court has also held that "[t]he adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments" and that the "State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence." *Taylor v. Illinois*, 484

U.S. 400, 410–11 (1988); *see also Williams v. Florida*, 399 U.S. 78, 81–82 (1970) ("We find ample room in that system, at least as far as 'due process' is concerned, for the instant [] rule, which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.").

Accordingly, the Court does not find unreasonable the Minnesota Court of Appeals' conclusion that the exclusion of Elmi's evidence under Minn. R. Crim. P. 9.02, subd. 1(5)(d), which requires a defendant to notify the prosecutor if the defendant intends to assert a defense of duress, did not result in a constitutional violation. *Elmi I*, 2017 WL 5663491, at *3. As it noted, this rule and other discovery rules are designed to give both parties the maximum possible amount of information to prepare their cases for trial and avoid surprise. *See State v. Lindsey*, 284 N.W.2d 368, 372–73 (Minn. 1979). Elmi did not raise his duress defense until after the State had rested its case. *Elmi I,* 2017 WL 5663491, at *3. The trial court determined that allowing Elmi to introduce the duress defense would seriously prejudice the State, which would have to recall its witnesses and reshape its case to address the new defense. *Id.* at *4. Furthermore, the court determined that a continuance was not feasible since the parties were in the middle of a trial. *Id.* Finally, contrary to the implication of Elmi's argument, the trial court did not prohibit him from testifying altogether, but only prohibited him from introducing evidence and testifying about the duress defense. *Id.* Because the Minnesota Court of Appeals did not unreasonably apply federal law to the issue of state procedural rules limiting a defendant's defense and testimony, the petition should be denied on this ground.

17

### E.    Evidence Supporting the Heinous Elements

Elmi lastly claims there is insufficient evidence to support the heinous elements of his conviction.  (Pet. at 12.)  The key inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  A federal court addressing a sufficiency of the evidence claim will grant relief only if the state courts' conclusion that the evidence satisfied the *Jackson* sufficiency of the evidence standard [is] both incorrect *and* unreasonable."  *Garrison v. Burt*, 637 F.3d 849, 855 (8th Cir. 2011).

The jury found that the State proved the following three heinous elements of those listed in Minn. Stat. § 609.3455, subd. 1(d) (2014):

> (5) the offender was armed with a dangerous weapon or any article used or fashioned in a manner to lead the complainant to reasonably believe it to be a dangerous weapon and used or threatened to use the weapon or article to cause the complainant to submit . . . (7) the offense involved more than one perpetrator engaging in sexual penetration or sexual contact with the complainant; or (8) the offender, without the complainant's consent, removed the complainant from one place to another and did not release the complainant in a safe place.

Elmi challenges the heinous elements described in subsections (5) and (8), conceding the State proved the element of subsection (7).

Elmi first argues the State did not prove that he was armed with a dangerous weapon during the sexual assault because it failed to show he was armed *during the commission* of the sexual assault or that he used or threatened to use the weapon to commit the sexual assault.  (Pet. at 12.)  The Minnesota Court of Appeals held that Elmi's proposed reading would improperly insert the word "during" into the heinous

18

element contrary to the plain meaning of the text. The court concluded it was sufficient that the evidence showed Elmi used a gun throughout the commission of the crime and threatened to kill the victim multiple times. *Elmi I*, 2017 WL 5663491, at *1–2. The victim stated in her 911 call and testified at trial that she knew they had guns and that she was scared they would kill her. *Id.* at *2.

In this habeas petition, Elmi essentially challenges the Minnesota court's interpretation of a Minnesota statute. However, "it is not the province of federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A state court's interpretation of state law is binding on a federal habeas court and therefore cannot be ground for habeas relief. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010). Elmi does not argue that the decision in *Elmi I* is contrary to any Supreme Court precedent. Nor does he argue that the court's findings of facts supporting the heinous element—as that court understood that element—are insufficient. Accordingly, this argument does not provide grounds for habeas relief.

Second, Elmi alleges that the State failed to prove the heinous element of Minnesota Statute § 609.3455, subd. (1)(d)(8), specifically, that the victim was not released in a safe place. (Pet. at 13.) The Court need not address this argument because only two heinous elements were required to support the life sentence. Elmi admits that one was present, and the Court has rejected Elmi's challenge to the dangerous weapon element. However, Elmi's argument as to the third element is also unavailing. He argues that 1) the victim thought Riverside Park was safe when she declined a ride back to her

19

residence; 2) the State failed to show that Riverside Park was unsafe, and 3) Riverside Park is located in a residential area.  The Minnesota Court of Appeals rejected these arguments because "there was evidence [the victim] was left in an unlit Minneapolis park, in the middle of the night, at a location unknown to her, and in an area where no other people or cars were present." *Elmi I*, 2017 WL 5663491, at *5.  Furthermore, the fact that the victim would rather stay in the park than spend another moment with the people who had kidnapped, robbed, raped, and threatened her did not establish that the park was a safe place.  *Id.*  The state court deferred to the credibility determinations of the jury.  Elmi has not demonstrated that the state court's assessment of the sufficiency of the evidence was anything but reasonable.

In the alternative, Elmi argues that it is "absurd" to impose a life sentence based on his having left the victim in an unsafe place when he had offered to drive her to a safe place, i.e., her home, and she refused that offer.  (Pet. at 13.)  Aside from the fact that the finding of the jury is supported by the evidence and comports with the clear language of the statute, Elmi's argument cannot be sustained from a logical or principled perspective. He directed the driver to the park where he and the driver sexually assaulted the victim. Then he left her there when, presented only with the choice of spending more time in the company of her rapists or being left alone at an unlit city park in the middle of the night, she chose the latter.  But she would not have been there at all but for him.

## III.    Recommendation

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the petition for a writ of habeas corpus of Petitioner Mohamed Ali Elmi [ECF No. 1] be **DENIED**.

Dated: May  3, 2022                              *s/ Hildy Bowbeer*
                                                 Hildy Bowbeer
                                                 United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).