**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

MOHAMED ALI ELMI,

                                            Civil No. 20-2241 (JRT/HB)
                         Plaintiff,

v.                                          **MEMORANDUM OPINION AND ORDER**
                                            **ADOPTING THE MAGISTRATE JUDGE'S**
WARDEN GUY BOSH                             **REPORT AND RECOMMENDATION**

                         Defendant.

Mohamed Ali Elmi, OID #244445, MCF-Stillwater, 970 Pickett Street North, Bayport, MN 55003, *pro se* plaintiff;

Edwin William Stockmeyer, III and Matthew Frank, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101; Jonathan P. Schmidt, **HENNEPIN COUNTY ATTORNEY'S OFFICE,** 300 South Sixth Street, Suite C-2000, Minneapolis, MN 55487, for defendant.

Plaintiff Mohamed Ali Elmi is currently serving a life sentence without the possibility of release based upon his conviction in state court of criminal sexual conduct, aggravated robbery, and aiding and abetting kidnapping. At his trial, Elmi was precluded from presenting a defense of duress and from testifying regarding this defense because his counsel failed to follow notice requirements under the Minnesota Rules of Criminal Procedure. After Elmi's conviction he engaged in several appeals in state court, appealing the conviction itself and then filing post-conviction motions arguing ineffective assistance of counsel. The Minnesota Court of Appeals upheld his conviction and subsequently denied his claims for ineffective assistance of counsel. He appealed and the Minnesota Supreme Court denied review of both cases.

Elmi then filed the current Petition for Writ of Habeas Corpus ("Petition") before this Court.  Elmi argues three separate grounds for relief.  Magistrate Judge Hildy Bowbeer reviewed Elmi's Petition and issued a Report and Recommendation ("R&R") recommending that the Petition be denied on all three grounds.  Elmi now objects to the R&R, raising four separate objections.  Because Elmi's appellate counsel's error cannot provide cause to excuse a procedural default, the Court will overrule Elmi's first objection. Because the state and appellate court's conclusion that the second prong of *Strickland v. Washington* was not met is not contrary to federal law or based on an unreasonable determination of facts, the Court will overrule Elmi's second and third objections.  And finally, because application of the notice requirement under Minnesota Rules of Criminal Procedure, barring Elmi from proffering a duress defense, was not contrary to federal law, the Court will overrule Elmi's fourth objection.  As such, the Court will adopt the R&R in full and will deny the Petition.

## BACKGROUND

### I.     CRIMINAL ACT

Elmi was convicted at trial of criminal sexual conduct, aggravated robbery, and aiding and abetting kidnapping.  *Minnesota v. Elmi*, No. A16–1692, 2017 WL 5663491, at *1 (Minn. Ct. App. Jan. 24, 2018) (hereinafter "*Elmi I*").  The facts that underlie that case are relevant to the Court's review of Elmi's habeas petition and as such, a brief summary of the facts related to the criminal act follow.

2

The victim was sitting outside her apartment when Elmi approached her and another individual, pointed a firearm at them, and demanded they give him everything they had. *Id.* When the victim began to cry, Elmi told her that he would shoot her if she did not stop. *Id.* Elmi then demanded that the victim go with him to an ATM so that he could empty out her account. *Id.* A car pulled up with another individual driving it and Elmi directed the victim into the car. *Id.* In the car, the victim testified that both Elmi and the driver had guns at one point, though she was unsure if it was the same gun or different guns. *Id.* She also testified that at one point the driver stated he wanted to kill someone tonight and Elmi responded he wanted to as well. *Id.*

After Elmi and the driver took the victim to an ATM, the driver expressed that he wanted to sexually assault the victim and Elmi responded that he "knew the perfect place." *Id.* at *2. Elmi then directed the driver to Riverside Park where they sexually assaulted the victim. *Id.* At the end of the assault, the driver stated that he was ready to take the victim home, but Elmi responded that he "wasn't done yet." *Id.* He then continued to sexually assault the victim. *Id.* Afterwards, the victim chose to stay in the park and make her way home, though she did not know where she was. *Id.*

After police were notified of the incident, they searched Riverside Park and found a palm print that matched Elmi on the park bench. *Id.* Elmi's DNA was also found at the scene of the crime. *Id.* Elmi was identified by police and indicted for the crime. *Id.* Law enforcement believed that the driver fled to East Africa. *Id.*

3

II.    TRIAL

Elmi's case went before a jury. *Id*. at *3.  After the state rested its case against Elmi, he moved the district court to allow him to present a duress defense. *Id.*  The district court denied the motion as untimely because Elmi's counsel had failed to provide the state with the proper notice pursuant to the Minnesota Rules of Criminal Procedure. *Id.* The district court specifically prohibited Elmi from testifying about any pressure he felt from another individual to perform the criminal act. *Id.*  Elmi then chose not to testify and when asked by the district court if he understood the ramifications of not testifying and was comfortable with that choice, Elmi responded in the affirmative. *Id.*  Elmi's counsel made an offer of proof as to what Elmi would have testified to, explaining that the driver had threatened Elmi and his brother's lives if they did not obey him and that Elmi believed the driver to have a gun. *Id.*  The defense called no witnesses. *Id.*  The jury found Elmi guilty on all six counts.

Additionally, the statute under which Elmi was charged allowed the district court to sentence him to life imprisonment if the fact finder found that two or more heinous elements, as defined by the statute, existed.  Minn. Stat. § 609.3455, subd. 2.  The jury held that three heinous elements existed—(1) the offender was armed with a dangerous weapon and used or threatened to use the weapon to cause the complainant to submit; (2) the offense involved more than one perpetrator engaging in sexual penetration or sexual contact with the complainant; and (3) the offender, without complainant's

consent, removed the complainant from one place to another and did not release complainant in a safe place.  *Id.*; *Elmi I*, 2017 WL 5663491, at *4; (App. at 168, Dec. 7, 2020, Docket No. 8.)  Because the factfinder found that more than two heinous elements existed, the district court sentenced Elmi to life in prison without the possibility of release. (App. at 168.)

### III.   STATE COURT APPEALS

Elmi appealed his conviction to the Minnesota Court of Appeals arguing it was error to prevent Elmi from testifying and that there was insufficient evidence to support the jury's finding of two or more heinous elements.  *Elmi I*, 2017 WL 5663491, at *3.  The Minnesota Court of Appeals found that the district court did not err in preventing Elmi from presenting a duress defense or testifying to any pressure he felt from any individual. *Id.* at *4.  The Minnesota Court of Appeals further held that there was sufficient evidence to support the jury's holding that three heinous elements were present.  *Id.* at *4–6.  For reasons unrelated to the current Petition, the Minnesota Court of Appeals reversed and remanded to the district court the formal adjudication of guilt on two of the counts.  *Id.* at 6–7.

Elmi appealed this decision, challenging both the holding as to his duress defense and the heinous elements.  (App. at 61.)  On January 24, 2018, the Minnesota Supreme Court denied review.  (*Id.* at 58.)  The Minnesota Court of Appeals then entered judgment on February 28, 2018.  (*Id.* at 56.)

Elmi then filed a petition in state court for post-conviction relief. (*Id.* at 47.) In this petition, Elmi argued ineffective assistance of counsel by both his trial court counsel and his appellate counsel. (*Id.*) The district court denied that motion without an evidentiary hearing. (*Id.*) The Minnesota Court of Appeals also denied his request for post-conviction relief ("*Elmi II*") reasoning that even if Elmi's trial counsel's performance fell below the objective standard of reasonableness, Elmi could not show that there was a reasonable probability that but for counsel's errors, the result of his trial would have been different. (App. at 17–18.) The appellate court also held that he had not demonstrated ineffective assistance of appellate counsel. (*Id.* at 18.) Lastly, the appellate court found it was not error for the district court to decline to hold an evidentiary hearing because the evidence Elmi presented, medical records, would not have established or bolstered his duress defense. (*Id.* at 17.) The decision in *Elmi II* was issued on April 20, 2020 and judgment was then entered on July 8, 2020. (*Id.* at 12, 14.)

Pursuant to Minn. R. Crim. P. 29.04, subd. 2, Elmi had thirty days from April 20, 2020 to file his petition with the Minnesota Supreme Court. Elmi filed a petition for review with the Minnesota Supreme Court on July 24, 2020. (*Id.* at 4–5.) He filed a motion asking the state supreme court to accept his late petition because COVID-19 protocols at the jail caused the delay. (*Id.* at 6–8.) The Minnesota Supreme Court denied his motion to accept the late petition because both the thirty-day deadline, and the deadline for requesting an extension had expired. (*Id.* at 1–2.)

6

## IV.    PROCEDURAL HISTORY

Elmi filed his Petition for Writ of Habeas Corpus with this Court on October 28, 2020. (Pet. Writ. Habeas Corpus, Oct. 28, 2020, Docket No. 1.)  Elmi asserts his conviction violates the Due Process Clause of the Fourteenth Amendment and the Sixth Amendment, and raises three grounds for relief in his petition, (1) trial counsel was ineffective for failing to raise the duress defense, (2) Elmi was denied the right to present a defense and testify, and (3) his sentence was not supported by evidence of two or more heinous elements. (*Id*. at 5–9.)

The Magistrate Judge reviewed Elmi's Petition and issued a Report and Recommendation ("R&R").  (R&R, May 3, 2022, Docket No. 33.)  The Magistrate Judge recommended that Elmi's Petition be denied.  (*Id.* at 21.)  Elmi filed objections to the R&R, raising four objections in total.  (Obj. R&R, July 5, 2022, Docket No. 38.)

### DISCUSSION

## I.    STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may file "specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1).  "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections."  *Mayer v. Walvatne*, No. 07–1958, 2008 WL 4527774, at *2 (D. Minn. Sept.

28, 2008).  For dispositive motions, the Court reviews de novo[1] a "properly objected to" portion of an R&R.  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).  "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error."  *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

A document filed by a pro se litigant is to be liberally construed and must be held to a less stringent standard than formal pleadings drafted by lawyers.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, pro se litigants are not excused from failing to comply with substantive or procedural law.  *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984).

## II.    ANALYSIS

As Elmi has raised four specific objections, the Court will take each in turn.[2]  First, Elmi challenges the Magistrate Judge's conclusion that his procedural default is not excused based upon his post-conviction counsel's ineffectiveness.   In his second and third objections, Elmi challenges the Magistrate Judge's overall conclusion that the *Strickland* test has not been met because Elmi could not demonstrate that his counsel's actions deprived him of a fair trial, i.e. the second *Strickland* prong.  Lastly, Elmi objects to the

---

[1] De novo means that this Court will review the evidence and the law independently, in other words, the Magistrate Judge's prior opinion has no influence on how the Court reviews the issues.  In essence, the Court will review the case from the start, as if it is the first court to review and weigh in on the issues.

[2] Elmi did not object to the Magistrate Judge's conclusion that there was sufficient evidence to support the jury's finding that three heinous elements existed.  Since he has raised no objection, the Court will adopt the Magistrate Judge's conclusions on this issue and deny the Petition on this ground.

Magistrate Judge's conclusion that his rights were not violated when the district court prevented him from presenting a duress defense and testifying as such.

### A. Objection One

The Antiterrorism and Effective Death Penalty Act ("AEDPA") allows a federal court to entertain an application for writ of habeas corpus, however, such a petition may not be granted unless the applicant has exhausted all remedies available in state court. 28 U.S.C. § 2254(b)(1). The Magistrate Judge held that Elmi failed to exhaust his remedies in state court and therefore his claims were procedurally defaulted. (R&R at 7.) The Magistrate Judge went on to hold that his procedural default was excused not because of his counsel's ineffectiveness in filing an appeal, but rather, because of COVID-19's impact on jail procedures. (*Id.* at 9–11.) Though the Magistrate Judge found that Elmi's procedural default **was excused**, Elmi objects to the Magistrate Judge's conclusion that the excusal was not warranted based upon his counsel's ineffectiveness.[3]

To overcome the bar on reviewing a procedurally defaulted claim, the petitioner must show cause that would excuse his failure to comply with state court procedure. *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017). To establish cause the petitioner must

---

[3] The Court is unclear why Elmi has chosen to object to this holding from the Magistrate Judge as the Magistrate Judge found that his procedural default was excused and proceeded to assess the merits of his claim. Respondent claims that Elmi's objection is moot considering that the Magistrate Judge excused Elmi's procedural default. Respondent cites no case law to support his position. Since Elmi has properly objected to this conclusion under the Court's rules, the Court will review his objection but notes that regardless Elmi's procedural default is excused and that it was proper for the Magistrate Judge to reach the merits of his Petition.

demonstrate some objective factor external to the petitioner that "cannot be fairly attributed" to him.  *Id.* (citing *Murray v. Carrier*, 447 U.S. 478, 488 (1986) and *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)).   Attorney error is an objective external factor providing cause "only if that error amounted to a deprivation of the constitutional right to counsel."  *Davila*, 137 S. Ct. at 2065 (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)).  Attorney error that does not violate the Constitution is imputed to the petitioner under the principles of agency law.  *Id.* (citing *Coleman*, 501 U.S. at 754).  The Supreme Court has clearly held that in proceedings for which the Constitution does not guarantee the assistance of counsel, such as state post-conviction proceedings, attorney error cannot provide cause to excuse a default.  *Id.*

Elmi makes two arguments as it relates to this objection.  First, Elmi states that the Magistrate Judge failed to consider *Martinez v. Ryan* in her R&R and that this case provides grounds upon which a procedural default can be excused for counsel's ineffectiveness in post-conviction proceedings.  *Matinez* qualified *Coleman's* unqualified statement that an attorney's ignorance or inadvertence in a post-conviction proceeding does not constitute cause to excuse a procedural default—detailing a narrow exception. 566 U.S. 1, 9 (2012).  This exception states that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause to  excuse a [petitioner]'s procedural default of a claim of ineffective assistance at trial."  *Id.*  This exception was created to address the issue that arises when an attorney errs in the initial-review

collateral proceeding—such error makes it more likely that no state court would be able to review the petitioner's claims at all. *Id.* at 10. *Martinez* distinguished itself from *Coleman* wherein the court found there was no cause for excuse of a procedural default when the alleged error of counsel occurred on an appeal from an initial-review collateral proceeding. *Id.* at 10; *Coleman*, 501 U.S. at 755.

Elmi argues that *Martinez* should apply here. But this case is much more like *Coleman* than *Martinez*, mandating the conclusion that the narrow exception set forth in *Martinez* does not apply. Elmi argues that he missed his opportunity to appeal the Minnesota Court of Appeals' decision as to his ineffective assistance of counsel claim because of attorney error. Elmi was not only able to present his ineffective assistance of counsel claims to a trial court, but he was able to present the arguments to an appellate court as well. Because his claim had already been addressed by not one but two state courts, the narrow exception in *Martinez*, where procedural default can be excused when attorney error precludes the issue from being addressed by any state court, does not apply. As such, the general rule that negligence or error on the part of one's attorney does not qualify as cause to excuse a procedural default applies here. *Coleman*, 501 U.S. at 753; *Maples v. Thomas*, 565 U.S. 266, 280–81 (2012).

Next, Elmi argues that the Magistrate Judge inappropriately relied upon *Maples* and that, in fact, the rule set forth in *Maples* applies to his case and provides cause to excuse his procedural default. In *Maples*, the court held that the prisoner's failure to

meet filing deadlines on his appeals was a result of his attorney wholly abandoning him

without notice.  565 U.S. at 281.  The Supreme Court held that by abandoning his client,

the attorney severed the principle-agent relationship, and a client cannot fairly be

charged with the acts or omissions of an attorney who abandoned him.  *Id.* at 238.

Elmi argues that his attorney abandoned him without notice and caused Elmi to

miss the filing deadline for his appeal to the Minnesota Supreme Court.  But Elmi, by his

own statements, demonstrates his attorney did not wholly abandon him.  Rather Elmi

asserts that his post-conviction counsel did indeed inform him of the Minnesota Court of

Appeals decision but did so after the time to file an appeal.  (App. at 8.)  This more closely

resembles attorney error than attorney abandonment.  No other evidence has been

presented which would undermine this conclusion.

As such, this case falls squarely within the confines of the rule laid out in *Coleman*,

that attorney negligence or error does not constitute cause excusing a procedural defect.

The Court will, therefore, overrule Elmi's objection on this point and adopt the Magistrate

Judge's finding.  Again, the Court notes that other grounds excuse Elmi's procedural

defect such that consideration of the merits of his Petition is proper.

### B.  Objections Two and Three

As stated above, one of Elmi's grounds for relief in his Petition is based upon his

assertion that his trial counsel was ineffective because counsel failed to raise the duress

defense in a timely manner at trial.  The Magistrate Judge held that Elmi had failed to

make a claim for ineffective assistance of counsel under *Strickland*, specifically as it relates to the second prong of the test. Elmi objects to the Magistrate Judge's conclusion in both his second and third objections.

AEDPA sets forth a highly deferential standard when reviewing state court decisions. *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004). In order to be granted relief under 28 U.S.C. § 2254, the petitioner must show the adjudication of their claim either (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state court. 28 U.S.C. § 2254(d). The federal court must presume the state court's factual determinations are correct unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e). *Perry v. Kemna*, 356 F.3d 880, 883 (8th Cir. 2004).

To prevail on an ineffective assistance of counsel claim, Elmi must show (1) that his counsel's representation "fell below an objective standard of reasonableness" defined as reasonableness "under prevailing professional norms," and (2) that the performance "prejudiced the defense" and that it deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). As for the second prong, the petitioner must show that "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different" where reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

13

The Minnesota Court of Appeals, in reviewing all the evidence, concluded that the evidence adduced at trial belied any proffered defense of duress offered by Elmi. The appellate court held that the evidence showed Elmi was not fearful for his life during the commission of the crime, was a willing participant, took steps further than what the driver had asked him to do, and continued to sexually assault the victim after the driver stopped. *Elmi I*, 2017 WL 5663491, at \*1–2. Thus, it held that he could not meet the second prong of *Strickland.* (App. at 17.)

The Magistrate Judge recited these facts and held that the Minnesota Court of Appeals' factual determinations were not unreasonable, nor did it unreasonably apply the *Strickland* standard. The Magistrate Judge stated that the appellate court articulated reasonable grounds, well-supported by the record, for concluding that trial counsel's performance would not deprive Elmi of a fair trial and recommended denying his Petition as to this ground.

Elmi objects to this conclusion, focusing mainly on the fact that the state court failed to hold an evidentiary hearing on additional evidence Elmi presented, namely medical records demonstrating he had been admitted to the hospital the night of the crime. He argues that the state court's failure to hold an evidentiary hearing constitutes an unreasonable determination of facts or at least is clear and convincing evidence rebutting the presumption that the state court's factual determinations are correct. Elmi's objection is unpersuasive.

14

Elmi claims that a federal court need not defer to a state court's factual findings when they were made without a hearing. *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003); *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).[4] But "there may be instances where the state court can determine without a hearing that a criminal defendant's allegations are entirely without credibility or that the allegations would not justify relief even if proved." *Nunes*, 350 F.3d at 1055. In *Nunes*, there was not enough evidence to make either determination, so a hearing was necessary, but in Elmi's case there was sufficient evidence.

The district court and appellate court both held that the evidence showed that Elmi was conclusively not entitled to relief on his ineffective assistance of counsel claims because the evidence at trial uncontrovertibly showed he was a willing participant. (App. at 16–17.) The Minnesota Court of Appeals held that an evidentiary hearing related to his affidavit and medical records would not alter that conclusion. (*Id.*) The appellate court went on to state that even in considering the affidavit and medical records, they do not establish Elmi was under a "present reasonable apprehension of instant death" that his fear "continued throughout the commission of the crime" or that he could not safely withdraw. (*Id.* at 17.) This is an instance unlike *Nunes*, where the state court had ample evidence from which it could determine, without a hearing, that Elmi's allegations would

---

[4] To be clear, Ninth Circuit decisions are not binding on this Court. Furthermore, while *Taylor* states this rule, it did not engage in any analysis of when an evidentiary hearing is actually required, focusing on a different defect in the state court post-conviction process. 366 F.3d at 1001.

not justify relief, even if true.  As such, Elmi has not presented clear and convincing evidence that would alter the Court's presumption in favor of state court factual findings.

But even assuming it was error for the state courts to not hold an evidentiary hearing as it relates to the medical records, the Court's conclusion does not change. Considering the evidence produced at trial, the appellate court's determination that the second prong of *Strickland* was not met was not an unreasonable factual determination nor was it contrary to federal law.  To prevail on the second prong of the *Strickland* test, Elmi would need to show that failure to present the duress defense "prejudiced the defense" and that it deprived him of a fair trial.  *Strickland*, 466 U.S. at 687–88.  As such, the Court must analyze whether, based on the evidence presented at trial, a duress defense would have called into question his conviction.

In order to proffer a duress defense, Elmi would have to prove that (1) due to threats, he was under a present reasonable apprehension of instant death should he refuse to participate in the crime, (2) that fear of instant death continued throughout the commission of the crime, and (3) he could not safely withdraw.  *State v. Charlton*, 338 N.W.2d 26, 31 (Minn. 1983).  Elmi claims the driver pulled out a gun and threatened to kill him and his brother if they did not participate in a robbery.  (Aff. Supp. Pet. at ¶ 4, Mar. 1, 2021, Docket No. 16.)  Elmi also states that the driver beat him so severely after their encounter with the victim that he had to be admitted to the hospital to address head trauma and injuries.  (*Id.* ¶ 5; Exs. A and B, Mar. 1, 2021, Docket No. 18.)  He states he

feared for his life, for the life of his brother and the victim, and that he did not believe he could leave. (*Id.* ¶¶ 6–7.)

But looking at all the evidence, including Elmi's statements and the medical records showing he was admitted to the hospital that evening, the Court cannot say that it was an unreasonable determination of facts to find that a duress defense would have altered the result of the proceeding. Elmi was a willing participant, he approached the victim alone, holding a gun. *Elmi I*, 2017 WL 5663491, at *1. He could have simply robbed the victim but instead he chose to force the victim to get into the car and go to the ATM. *Id.* Elmi threatened to kill the victim if she would not stop crying, held a gun at multiple points, and held a gun even when he was with the driver. *Id.* Elmi responded to the driver's statement that he wanted to kill someone with "me too." *Id.* Elmi suggested and directed the driver to the spot where they would commit the sexual assault and when the driver stated he was finished with the assault, Elmi stated he was not done yet and continued to sexually assault the victim. *Id.* at *2. This testimony from the victim was corroborated by video evidence and Elmi's DNA. *Id.*

This evidence supports the state courts' conclusions that Elmi would not have been able to prove a duress defense. The evidence shows that that he was not under reasonable apprehension of instant death, that this fear continued throughout the crime, or that he could not safely withdraw. Notably, Elmi held a weapon several times during the course of the criminal act, several aspects of the crime were his idea, and he

continued to assault the victim after the driver was finished.  The evidence shows he was a willing participant, and that there was overwhelming evidence to convict him of the crime.  (App. 16–18.)

The state court's finding that there was overwhelming evidence against Elmi and that he could not demonstrate that the outcome of his trial would be altered if he had presented a duress defense was not an unreasonable determination of facts or a ruling contrary to federal law.  Thus, the Court will overrule Elmi's objection to the R&R and adopt the Magistrate Judge's conclusion denying Elmi's Petition for habeas relief based upon ineffective assistance of counsel.

### C.  Objection Four

Elmi argues that he is entitled to habeas relief because the state court violated his constitutional rights when it ruled that he was precluded from testifying about duress or presenting such a defense based upon his failure to provide timely notice of the defense as required under Minnesota Rules of Criminal Procedure.  The Minnesota Court of Appeals concluded that this was not a constitutional violation.  *Elmi I*, 2017 WL 5663491, at *3.  Elmi asserts that the state courts unreasonably applied federal law to the state procedural issue and Elmi's Petition should be granted.  The Magistrate Judge disagreed, finding that there was no unreasonable application of federal law, and his Petition should be denied on this ground.

It is undisputed that criminal defendants are guaranteed the opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). This includes the criminal defendant's right to testify in their own defense. *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). These rights, however, are not without limitation, and they may "bow to accommodate other legitimate interests in the criminal trial process." *Id.* at 55–56 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)). But restrictions must not be "arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 56. Thus, state and federal rulemakers have "broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

The Supreme Court has stated that rules, such as the one here, requiring that the defense notify the prosecutor or the court of a proposed action, are not unconstitutional. For example, in *Nevada v. Jackson*, the Supreme Court held that a rule requiring notice to be provided before introducing certain evidence was not unconstitutional and that "[n]o decision of this Court clearly establishes that this notice requirement is unconstitutional." 569 U.S. 505, 510 (2013). The Supreme Court has held that the "role of evidentiary rules in the adversarial process is to 'govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case.'" *Newman v. Hopkins*, 247 F.3d 848, 852 (8th Cir. 2001) (citing *Taylor v. Illinois*, 484 U.S. 400, 410–11 (1988)).

Based upon the Supreme Court's clear guidance on the issue, it was not contrary to federal law for the Minnesota Court of Appeals to hold that the notice requirement did not violate Elmi's constitutional rights. The trial and appellate court reviewed application of the evidentiary rule under the standard laid out in *State v. Lindsey* which properly balances the restriction on a criminal defendant's rights with the state's interest in an orderly and fair trial. 284 N.W.2d 368, 372–73 (Minn. 1979). *Lindsey* requires the trial court, in exercising its discretion to enforce an evidentiary rule, to look to the reason why disclosure was not made, the prejudice it would cause to the other party, the feasibility of a continuance, and any other relevant factors. *Id.* The trial court precluded the duress defense because introduction of it after the state rested would prejudice the state, require them to recall witness, and it was not feasible to continue the trial. *Elmi I*, 2017 WL 5663491, at *4. Application of the rule at Elmi's trial was not arbitrary or disproportionate to the valid state interests the rule serves. And the Minnesota Court of Appeals' decision to uphold the trial court was likewise not contrary to federal law.

Elmi cites many cases in his objections but none of the case law persuades the Court otherwise. Nor was Elmi precluded from testifying. The trial and appellate court were clear that Elmi could testify on his own behalf but would be limited in discussing his duress defense. This is not a complete bar on his constitutional right to testify.

The Minnesota Court of Appeals did not unreasonably apply federal law to the evidentiary rule precluding Elmi from presenting his duress defense or testifying to any

pressure he felt.  As such, the Court will overrule Elmi's objection and adopt the R&R's conclusion that the Petition should be denied on this ground.

### III.   CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a petitioner "has made a substantial showing of the denial of any federal constitutional right."  *Copeland v. Washington*, 232 F.3d 969, 977 (8th Cir. 2000); *see also* 28 U.S.C § 2253(c)(2).   The petitioner must show that "the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings."  *Flieger v. Delo*, 16 F.3d 878, 883 (8th Cir. 1994); *see also Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  The Court finds it unlikely that another court would decide the issues raised in Elmi's motion differently and the issues are not debatable or deserving of further proceedings.  The Court therefore concludes that Elmi has failed to make the required substantial showing of the denial of a constitutional right and will deny a Certificate of Appealability.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Plaintiff's Objections to the Report and Recommendation [Docket No. 38], and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 33].  **IT IS HEREBY ORDERED** that:

1.   Plaintiff's Petition for Writ of Habeas Corpus [Docket No. 1] is **DENIED**;

2.  The Court does **NOT** certify for appeal under 28 U.S.C. § 2253(c) the issues

raised in Elmi's Petition.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: October 6, 2022
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge